UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
GULSHAN PIERRE-ANTOINE, and :
PAUL PIERRE-ANTOINE, :
 :
                              Plaintiffs, :
 : 04 Civ. 6987 (GEL)
    -v- :
 : **OPINION AND ORDER**
CITY OF NEW YORK, SERGEANT ROGAN, :
TAX REG # 892006, POLICE OFFICER JAMES :
G. WILLIAMS, TAX REG # 919867 and :
UNIDENTIFIED NEW YORK CITY POLICE :
OFFICERS, EMPLOYEES AND AGENTS, :
 :
                              Defendants. :
 :
------------------------------------------------------------x

Gulshan Pierre-Antoine and Paul Pierre-Antoine, pro se.

Michael A. Cardozo, Corporation Counsel of the City of New York, by Anna Nguyen, Assistant Corporation Counsel, for defendants City of New York, Sergeant Philip Rogan, and Police Officer James G. Williams.

GERARD E. LYNCH, District Judge:

      Plaintiffs Gulshan and Paul Pierre-Antoine bring a series of claims under 42 U.S.C. § 1983 against defendants City of New York, Sergeant Philip Rogan, and Police Officer James G. Williams, alleging various civil rights violations, including excessive force, abuse of process, and deprivation of First Amendment rights. Plaintiffs also allege intentional infliction of emotional distress, libel, slander, assault, conspiracy, and trespass. Defendants move for summary judgment on all claims. For the reasons that follow, defendants' motion will be granted except as to plaintiff Gulshan Pierre-Antoine's claims against Williams for assault, excessive force, and failure to intercede to prevent excessive force.

BACKGROUND

On March 29, 2003, a number of New York City police officers, including defendant Williams, encountered plaintiffs in the vicinity of 82nd Street and Roosevelt Avenue in Queens, New York. Plaintiff Gulshan[1] was carrying, in open view, a cane sword in a sheath; he claims to have obtained the sword after an unprovoked March 2002 attack on him by a group of strangers in a Queens nightclub.[2] Upon seeing the cane sword, Officer Williams approached plaintiff, took hold of the weapon, and attempted to handcuff plaintiff, who resisted arrest. (See D. Rule 56.1 Statement ¶¶ 1-9.)

In the scuffle that followed, Gulshan, Williams, and other officers went down to the ground. Despite Gulshan's resistance and an attempt by plaintiff Paul to prevent the arrest of Gulshan by pushing against Williams, the officers eventually handcuffed both plaintiffs, as well as a third individual who is no longer involved in this case. Defendant Rogan arrived on the scene only after plaintiffs had successfully been arrested. Gulshan later pled guilty to criminal possession of a weapon and resisting arrest. Paul pled guilty to disorderly conduct. (See id. ¶¶ 9-12, 16-18, 34.)

Though the above-described facts appear to be beyond dispute on the limited record before the court, the parties offer sharply diverging accounts of the details. According to Gulshan's deposition testimony, the officers "thr[e]w" him to the ground after one of them

---

[1] Because plaintiffs have the same surname, the Court will refer to them using their first names.

[2] The 2002 attack, Gulshan testified, left him with multiple stab wounds. According to Gulshan, he acquired the cane sword in order to deter future attacks and because it made him feel safer, and he carried a knife in his pocket for the same reason. Gulshan testified that he never used either weapon. (See Gulshan Pierre-Antoine Dep. 19:12-23, 20:6-8, 22:19-25.)

grabbed his cane sword. (Gulshan Pierre-Antoine Dep. 42:8-14, 47:2-8.) Despite his attempt to explain that he was himself a crime victim and was disabled, the officers "slamm[ed]" him on the ground in a "hostile" and "violent" manner, telling him to "shut up." (Id. 47:11-17; see also id. 64:2-5.) The officers kept him pinned to the ground face-down, Gulshan testified, by standing on his arms and his legs, the latter of which were already wounded due to the March 2002 attack. (Id. 50:16-25, 57:7-12.) Gulshan further testified that the officers punched him and kicked him repeatedly in several parts of his body; stomped on his back, neck, and legs; and caused him to scrape his face on the sidewalk. (Id. 62:4 to 65:24.) He was allegedly punched so many times in the head that he does not remember whether he was kicked in the head as well: "I just know," he stated, "[that] I got punched in the head so many times if I got kicked in the head it wouldn't have made a big difference from being punched." (Id. 62:24 to 63:4.) Though plaintiff moved around to protect himself to the extent he was able, he denied attempting to strike the officers back. (Id. 57:13 to 58:4.) Even after he was handcuffed, plaintiff testified, the officers continued to "rough[] [him] up." (Id. 51:19-25.) An ambulance later took him to a hospital, where he was treated with pain medication, given one stitch, and released after approximately six hours. (Id. 108:1-18.) As of his May 24, 2005, deposition, plaintiff claimed that he still had an unhealed swelling on one leg; immense, constant pain in both legs; a "hole" in his hand; and a scar on his face. (Id. 116:13-18.) He also continued to experience emotional injuries. (Id. 124:21-23.)

In the portions of Williams' testimony provided to the Court, there are no statements that directly deny Gulshan's allegations regarding the force used against him, though Williams' description of the events certainly suggests that no undue force was used. In their summary

3

judgment papers, moreover, defendants insist that any force used by police against Gulshan was "de minimis," and that Gulshan's testimony was both exaggerated and unsupported by medical evidence. (D. Mem. Motion for Summary Judgment at 5-7.)

Plaintiff Paul Pierre-Antoine also alleges physical mistreatment at the hands of the arresting officers, though the extent of the alleged abuse appears significantly less than that which Gulshan claims to have suffered. Paul testified that the officers grabbed him, tripped him, hit and kicked him in several parts of his body for ten to fifteen seconds, and threw him inside a vehicle. (Paul Pierre-Antoine Dep. 49:13-20, 52:14-25.) At one point, they allegedly pulled Paul's arms above his head as if trying to "pop" his shoulders out. (Id. 50:1-17.) Like Gulshan, Paul was unable to identify by name which officers engaged in these alleged abuses. (Id. 50:20 to 51:1, 53:1-5, 53:20-23.) His injuries, he testified, were limited to some bruising, which healed after approximately one week and for which he did not seek medical attention. (Id. 90:13 to 93:13). Paul also claimed emotional injuries, which took the form of a general fear or mistrust of police officers. (Id. 93:117-25, 96:8-12.) He did not seek any treatment for the alleged emotional injuries. (Id. 99:13-15.)

As in the case of Gulshan's claim, there is no witness testimony in the record that attempts to refute directly Paul's claims of excessive force. Defendants argue in their summary judgment papers, however, that Paul's testimony is inaccurate, contradictory, and uncorroborated. (D. Mem. Motion for Summary Judgment at 9.)

With the assistance of counsel, plaintiffs filed their complaint alleging civil rights violations and state law torts on August 27, 2004, but withdrew some of their claims on August 17, 2005. On November 14, 2005, defendants filed the instant motion, seeking summary

4

judgment on the remainder of plaintiffs' claims. Upon plaintiffs' request, and because their attorney had been disbarred in an unrelated proceeding, this Court granted plaintiffs until March 14, 2006, to respond to defendants' motion. Plaintiffs filed no response; nor did they seek any further extension. Accordingly, the motion for summary judgment is considered fully submitted.

## DISCUSSION

I. Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden rests on the moving party to demonstrate the absence of a genuine issue of material fact, and the court must construe the evidence in the light most favorable to the nonmoving party. See Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005).

Under Local Rule 56.1, a party moving for summary judgment must submit a statement of the allegedly undisputed facts on which the moving party relies, with citations to the admissible evidence of record supporting each of those facts. See Local Rule 56.1(a), (d). If the opposing party then fails to controvert a fact set forth in the moving party's Rule 56.1 statement, courts generally will deem that fact to be admitted. See Local Rule 56.1(c). This general rule applies equally to pro se plaintiffs where, as here (see D. Rule 56.2 Statement), the plaintiff has been provided with adequate notice of the consequences of failing to respond to a Rule 56.1 allegation. See M.B. # 11072-054 v. Reish, 119 F.3d 230, 232 (2d Cir. 1997) (per curiam); Champion v. Artuz, 76 F.3d 483, 486-87 (2d Cir. 1996) (per curiam).

5

A district court has broad authority, however, to overlook a party's failure to comply with local court rules in the interests of justice. See Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001). Thus, for example, where a court's own review of the record reveals that a genuine dispute exists with respect to a particular fact, the court is not required to deem the fact admitted merely because the nonmoving party has failed to submit a relevant counterstatement under Rule 56.1. See also Giannullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003) (explaining that "a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record," and that where "the record does not support certain critical assertions in the defendant's Rule 56.1 statement . . . the unsupported assertions must . . . be disregarded and the record independently reviewed," even where the plaintiff failed to specifically controvert the Rule 56.1 statements in a counterstatement (citations and internal quotation marks omitted)). In the instant case, therefore, the Court will deem facts asserted in defendants' Rule 56.1 statement to be admitted unless the Court's own review of the record reveals that there is a genuine issue of material fact.

II. Plaintiffs' Claims of Excessive Force and Failure to Intercede

A police officer's use of force is excessive, in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [the officer], without regard to [his or her] underlying intent or motivation.'" Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004), quoting Graham v. Connor, 490 U.S. 386, 397 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at

6

stake." Graham, 490 U.S. at 396 (citations and additional internal quotation marks omitted).

Often, the use of some physical coercion is necessary and inevitable. "[N]ot every push or shove," therefore, is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers.'" Maxwell, 380 F.3d at 108 (citation and internal quotation marks omitted). A plaintiff must normally allege more than a de minimis use of force to sustain a constitutional claim. Cf. Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) (noting in the Eighth Amendment context that "a *de minimis* use of force will rarely suffice to state a constitutional claim"). That is not to say, however, that a plaintiff must allege a severe injury in order to sustain a claim that the use of force was objectively unreasonable under the Fourth Amendment. See, e.g., Maxwell, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising," citing Robison v. Via, 821 F.2d 913, 924-25 (2d Cir. 1987)).

Even where an officer does not personally use excessive force, but witnesses the use of excessive force by other officers, he or she may be liable for failing to intercede to prevent the constitutional violation committed by others. See Provost v. City of Newburgh, 262 F.3d 146, 168 (2d Cir. 2001) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." (citation and internal quotation marks omitted)); Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be.").

A. Gulshan's Claims against Williams

Defendants have failed to show the absence of a genuine issue of material fact with respect to Gulshan's claim that Williams used excessive force and failed to intercede to prevent the use of excessive force by other officers. As described in detail above, Gulshan's sworn testimony describes a scene in which officers repeatedly punched, kicked, and stomped on him, despite the fact that he did not fight back and despite his repeated attempts to explain that he was disabled.[3] Though Gulshan does not describe Williams by name, Williams' testimony leaves little doubt that he was involved in the scuffle and that he was one of the officers who helped bring Gulshan down to the ground. (Williams Dep. 18:9 to 22:25.) Moreover, plaintiff testified that the officer who grabbed the cane sword was one of the officers who threw him down, and defendants concede that it was Williams who took hold of the sword. (Gulshan Pierre-Antoine Dep. 47:21 to 48:4; D. Rule 56.1 Statement ¶ 8.) In addition, Gulshan's testimony suggests that he was further assaulted after he was handcuffed, when a claim of necessary force would be much harder to maintain. (See Gulshan Pierre-Antoine Dep. 51:19:25.) If a jury were to credit Gulshan's version of the events, it could reasonably find Williams liable for using objectively unreasonable force and/or for failing to intercede to prevent the use of objectively unreasonable force by other officers.

---

[3] In light of Gulshan's sworn testimony, defendants are simply incorrect in arguing that Gulshan "has failed to put forth any evidence to support his allegation that any force by police was anything more than *de minimis*." (D. Mem. Motion for Summary Judgment at 5.) While significant force may occasionally be justified, punching and kicking a self-proclaimed disabled person, stomping on his back and neck, and scraping his face against concrete cannot properly be described as a "de minimis" use of force.

8

As defendants point out, a number of factors undermine Gulshan's claims, both by demonstrating that the some force was necessary and by making it less likely that a jury will credit Gulshan's testimony. It is undisputed, for example, that Gulshan possessed a weapon in open view, at least up until the time the struggle began, and that he resisted arrest. Some use of force, therefore, was clearly justified. But even if this evidence conclusively establishes that *some* degree of force was necessary to subdue and arrest him, that does not mean that, as a matter of law, the extent or duration of the force allegedly used was objectively reasonable. See Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000). The reasonableness of the force used is a question for the fact-finder to decide.

Defendants also point out that the medical evidence does not fully corroborate Gulshan's description of the extent of his injuries, and that some of Gulshan's wounds resulted not from excessive police force but from the May 2002 stabbing incident. Emphasizing the discrepancies between Gulshan's allegations and the medical records, defendants argue that "[a]ny purported claim of excessive force that is not supported by any medical evidence should be dismissed." (D. Mem. Motion for Summary Judgment at 7.) This is not a case, however, in which plaintiff's claim is unsupported by "any medical evidence." Though much of the medical evidence in the record is illegible, it appears to corroborate that Gulshan experienced, at the very minimum, leg pain, contusions, swelling, and a minor laceration requiring one stitch. (D. Rule 56.1 Statement ¶¶ 20-28; Nguyen Dec. Exs. Q, R.) An ambulance transported him to a hospital, where doctors instructed him to return in two days for "wound check" and in four to five days for "suture removal." (Nguyen Dec. Ex. R; see also D. Rule 56.1 Statement ¶¶ 21-28.) Moreover, the cases on which defendants rely for their contention that the absence of medical evidence necessarily

9

dooms an excessive force claim are not directly applicable, because those cases presented the question of whether official conduct constituted "cruel and unusual punishment" under the Eighth Amendment, not whether conduct was "reasonable" under the Fourth Amendment. See Santiago v. C.O. Campisi Shield No. 4592, 91 F. Supp. 2d 665 (S.D.N.Y. 2000); DeArmas v. Jaycox, 92 Civ. 6319 (LMM), 1993 WL 37501 (S.D.N.Y. Feb. 8, 1993). (And, to the extent Eighth Amendment cases are applicable, it is worth noting that a plaintiff need not allege serious injury to state an Eighth Amendment claim. See Hudson v. McMillian, 503 U.S. 1, 4 (1992).)

Certainly, the medical evidence makes it less likely that Gulshan can prevail at trial, particularly because it does not reveal any severe injury; such evidence does not, however, entitle Williams to judgment as a matter of law. Cf. Via, 821 F.2d at 924 ("While Robison did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury in assessing whether the force used was excessive, this failure is not fatal to her claim. If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe."). It is for the fact-finder to weigh all of this evidence against Gulshan's sworn testimony, and to assess whether and to what extent the medical evidence strips that testimony of its credibility.

Though defendants fail to demonstrate the absence of a genuine issue of material fact with respect to Gulshan's excessive force claims against Williams, there remains the possibility that Williams is entitled to qualified immunity. Under the doctrine of qualified immunity, Williams is immune from suit if the rights he is alleged to have violated were not "clearly established" at the time of the alleged violation, or if his actions were objectively reasonable in light of the legal rules that were clearly established at the time they were taken. Sadallah v. City

of Utica, 383 F.3d 34, 37 (2d Cir. 2004); see Saucier v. Katz, 533 U.S. 194 (2001). To survive a qualified immunity defense, the "contours of the right" that the official is alleged to have violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citations and internal quotation marks omtitted). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. The purpose of qualified immunity in this context is "to protect officers from the sometimes hazy border between excessive and acceptable force, and to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful." Id. at 206 (citation and internal quotation marks omitted).

Applying these principles here, it is clear that if Gulshan's account is credited, Williams would not be entitled to qualified immunity on Gulshan's excessive force claims, because a reasonable officer would have known that repeatedly punching, kicking, and stomping on Gulshan violated a clearly established constitutional right not to be subjected to excessive force during arrest. See, e.g., Maxwell, 380 F.3d at 108. The fact that Gulshan carried a cane sword does not alter this conclusion, primarily because defendant Williams had already taken the cane sword from Gulshan by the time the struggle began.[4] (See D. Rule 56.1 Statement ¶ 8-9; see also Gulshan Pierre-Antoine Dep. at 42:15-18, 69:25.) Nor is Gulshan's conceded resistance to arrest conclusive. Given that several officers were present and available to assist with the arrest,

---

[4] Gulshan's hidden possession of other weapons is irrelevant because defendants do not claim that they knew of those weapons when they used force against plaintiff. See Saucier, 533 U.S. at 207 ("Excessive force claims, like most other Fourth Amendment issues, are evaluated for objective reasonableness based upon the information the officers had when the conduct occurred.").

11

Gulshan's resistance (which on his account was modest and largely passive) should not have made his arrest so difficult that reasonable officers would believe that the law permitted them to repeatedly punch, kick and stomp on plaintiff in the manner and to the extent that plaintiff alleges, especially considering that Gulshan (1) was already pinned face down on the ground when the officers were striking him, (2) repeatedly told them that he was disabled and in pain, and (3) did not attempt at any point to strike the officers back. See also Sullivan, 225 F.3d at 165-66 ("As our brethren in other Circuits have squarely held, [a conviction] for resisting arrest and/or other offenses such as assault on a police officer does not necessarily preclude a subsequent claim of excessive force in federal court. . . . The fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, but it does not give the officer license to use force without limit."). Thus, if Gulshan's account is credited, which is for the jury to determine, this case does not involve the "hazy border between excessive and acceptable force," Saucier, 533 U.S. at 206 (citation and internal quotation marks omitted), but the violation of a clearly established right for which qualified immunity is unavailable.

    B. Paul's Claims against Williams

Because Paul was unable to identify any of the officers who used force against him, there is no evidence in the record now before the Court indicating that Williams used any physical force against Paul during the events at issue. Accordingly, Williams is entitled to summary judgment to the extent that Paul alleges direct involvement by Williams in the use of excessive force by the officers.

To the extent Paul alleges that Williams failed to intercede to prevent unconstitutionally excessive force by others, that claim also fails as a matter of law. Paul alleges that unidentified officers tripped him, hit and kicked him for no more than fifteen seconds, and then threw him into a vehicle. The only resulting injury was bruising, which disappeared after about a week without medical treatment. (See Paul Pierre-Antoine Dep. 90:13 to 91:23. See also Paul Pierre-Antoine's Answer to First Set of Interrogatories at ¶ 4 (answering "Not applicable" to a request that plaintiff identify all of his injuries resulting from the encounter with police).) Even assuming arguendo that this limited use of force was excessive in light of the circumstances, there is neither evidence nor any specific allegation that Williams himself actually observed this use of force and had a "a realistic opportunity to intervene to prevent" it during the approximately fifteen seconds during which it is alleged to have occurred. Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994). On the contrary, the only relevant evidence in the record suggests that Williams was engaged in a struggle on the ground with Gulshan, and thus could not have intervened even if he had observed an excessive use of force during the fifteen seconds in question. In light of plaintiffs' failure to present evidence that Williams observed the excessive force against Paul and refused an opportunity to prevent harm, no reasonable jury could find Williams liable for failure to intercede to protect Paul.

Furthermore, if there were a genuine issue as to whether Williams violated Paul's Fourth Amendment rights by failing to intercede to prevent the use of excessive force, Williams would be entitled to qualified immunity on this claim. In light of the uncontested facts – including Paul's attempt to disrupt the arrest of Gulshan, and Gulshan's own resistance and his possession of a weapon – it would not be clear to a reasonable officer that, at or about the same time that he

13

was attempting to arrest a suspect engaged in resistance, he also had an affirmative duty to intercede to prevent fifteen seconds of limited force against another disorderly suspect at the scene.

C. Plaintiffs' Claims Against Rogan

To the extent plaintiffs claim that Rogan engaged in excessive force or failed to intervene to prevent the use of excessive force by others, their claims fail as a matter of law. The only evidence of Rogan's involvement indicates that he arrived on the scene after plaintiffs had successfully been arrested and handcuffed, and nothing in the limited portion of Rogan's testimony provided to the Court indicates that he witnessed or participated in the use of force. (See Rogan Dep.15:9-25; see also D. Rule 56.1 Statement at ¶ 16.) Plaintiffs have not provided any evidence calling this version of events into question. There is thus no genuine issue of material fact as to whether Rogan participated in the use of excessive force or failed to intercede, and he is entitled to judgment as a matter of law on those claims.

D. Municipal Liability

Plaintiffs seek to hold the City of New York liable for the alleged excessive force used against them. A city may be liable under § 1983 where "'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" Amnesty America v. Town of West Hartford, 361 F.3d 113, 124-25 (2d Cir. 2004), quoting Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978). "Demonstrating that the municipality itself caused or is implicated in the constitutional violation is the touchstone of establishing that a municipality can be held liable for unconstitutional actions taken by municipal employees." Id. at 125. The municipality cannot be

held liable simply on a theory of respondeat superior. Monell, 436 U.S. at 694. Though a plaintiff need not show the existence of an explicitly stated rule or regulation, the plaintiff cannot prevail where there is no evidence supporting an inference that an official policy or custom caused the denial of a constitutional right. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995) (rejecting municipal liability where the "record [was] devoid of any evidence from which a reasonable juror could have inferred the existence of a municipal policy" that caused the violation of a constitutional right).

Applying these standards here, the City of New York is entitled to summary judgment on plaintiffs' claims of excessive force and failure to intercede. The complaint identifies a single incident of excessive force, but there is not a shred of direct or circumstantial evidence in the record suggesting that the City has a policy or custom of encouraging or condoning the kind of unconstitutional conduct alleged by plaintiffs.

E. Assault Claims

Plaintiffs' state law assault claims effectively duplicate their constitutional excessive force claims, and must be disposed of in the same manner. As defendants acknowledge, "the test for whether a plaintiff can maintain a supplemental cause of action for assault and battery is the exact same test as the one used to analyze a Fourth Amendment excessive force claim." (D. Mem. Motion for Summary Judgment at 20 (citation and internal quotation marks omitted)); see Anthony v. City of New York, 00 Civ. 4688 (DLC), 2001 WL 741743, at *13 (S.D.N.Y. July 2, 2001); Hogan v. Franco, 896 F. Supp. 1313, 1315 n.2 (N.D.N.Y. 1995). Because there is a genuine issue of material fact as to whether Williams used excessive force against Gulshan, there is likewise a genuine issue of material fact as to whether Williams committed assault against

Gulshan, and the motion for summary judgment is thus denied with respect to the assault claim. With respect to Paul's assault claims, however, as well as Gulshan's assault claims against defendants other than Williams, defendants are entitled to summary judgment for the same reason that they are entitled to summary judgment on the excessive force claims.

III. Plaintiffs' Remaining Claims

Plaintiffs present a laundry list of additional claims, all of which fail as a matter of law with respect to all defendants. Plaintiffs' claim of intentional infliction of emotional distress must be dismissed, for example, because the evidence does not support a finding that defendants' conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency," or that it was "atrocious[] and utterly intolerable in a civilized community." Howell v. New York Post Co., 81 N.Y.2d 115, 122 (1993). No reasonable jury could find otherwise. Moreover, plaintiffs failed to provide any medical evidence of severe emotional injury. See Walentas v. Johnes, 257 A.D.2d 352, 353 (1st Dep't 1999) ("The plaintiff [claiming intentional infliction of emotional distress] is required to establish that severe emotional distress was suffered, which must be supported by medical evidence, not the mere recitation of speculative claims." (citations omitted)).

Plaintiffs' abuse of process claim also fails, because plaintiffs fail to allege or provide any evidence of a "collateral objective that is outside the legitimate ends of the process." Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir. 1994). Moreover, plaintiffs' guilty pleas—along with other evidence in the record—establish that there was probable cause for their arrests. See Granato v. City of New York, 98 Civ. 667 (ILG), 1999 WL 1129611, at *7 (E.D.N.Y. Oct. 18, 1999) ("It is true that [lack of] probable cause, as such, is not an element of the tort of abuse of process. But

16

it is no less true under New York law that a showing of probable cause at the time process issued suffices also to establish 'excuse or justification' for the purposes of a defense to abuse of process." (citation omitted)).

With respect to Paul's claim that his First Amendment rights were violated when he was arrested and assaulted for objecting to the arrest of Gulshan, defendants are entitled to summary judgment because there is no evidence that Paul's *speech* was a substantial or motivating factor in the alleged retaliatory action. See Beechwood Restorative Care Ctr. v. Leeds, 436 F.3d 147, 152 (2d Cir. 2006). On the contrary, the uncontested evidence establishes that the officers used force against Paul and arrested him because he attempted physically to disrupt the arrest of Gulshan.

Finally, plaintiffs' claims of libel, slander, invasion of privacy, conspiracy, and trespass must all be dismissed because plaintiffs have not identified a sufficient factual basis for these claims or come forward with any evidence at all to support them.[5]

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is denied as to plaintiff Gulshan Pierre-Antoine's claims that defendant Williams assaulted him, used excessive force, and failed to intercede to prevent the use of excessive force by other officers. Defendants' motion is granted as to all other claims.

---

[5] To the extent plaintiffs purport to hold the City of New York liable based on any of the § 1983 claims described in Part III of this Opinion and Order, such as the First Amendment claim or the abuse of process claim, plaintiffs' claims are rejected for the additional reason that there is no evidence of a city policy or custom that approves or condones of the alleged unconstitutional behavior. See supra Part II.D.

17

SO ORDERED.

Dated: New York, New York
      May 9, 2006

                                                                      GERARD E. LYNCH
                                                                   United States District Judge